**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| **v.** | : | |
| **LAMAR MCGURN, a/k/a "Alymar"** | : | **NO. 05-598-12** |

**MEMORANDUM RE § 2255 PETITION**

**Baylson, J.**                                                                               **May 16, 2014**

Petitioner, Lamar McGurn, represented by counsel participating in the Court's pro bono

prisoner civil rights panel, has requested relief under 28 U.S.C. § 2255.[1]

I.      **BACKGROUND**

On March 22, 2006, a grand jury in the Eastern District of Pennsylvania returned a

21-count superseding indictment naming defendant Lamar McGurn and 12 others.  McGurn was

charged with one count of conspiracy to distribute five kilograms or more of cocaine, in violation

of 21 U.S.C. § 846 (Count 20).  On March 14, 2007, McGurn and two other defendants

proceeded to trial.  At the conclusion of a 10-day jury trial, McGurn was convicted of the charge.

On July 3, 2007, the district court sentenced McGurn to 360 months imprisonment, eight

years supervised release, a $5,000 fine, and a $100 special assessment.  McGurn was sentenced

as a career offender based upon his prior convictions for murder and possession with intent to

distribute cocaine.  McGurn appealed his conviction and sentence.

On February 3, 2009, the Court of Appeals affirmed the judgment of the District Court.

On April 6, 2009, the United States Supreme Court denied certiorari.  On April 8, 2010, McGurn

_____

[1] The Court expresses its appreciation to A. Elizabeth Balakhani and Mary Gibbons for their very
committed representation of Petitioner and for their outstanding briefs.

filed a habeas corpus motion pursuant to 28 U.S.C. § 2255.  On May 5, 2010, McGurn filed an amended petition pursuant to § 2255.

In his petition McGurn made several claims for relief, all of which the Court denied on September 30, 2010.  The Third Circuit Court of Appeals granted a certificate of appealability with respect to one issue:  "whether the District Court erred in denying without an evidentiary hearing McGurn's claim that counsel was ineffective during the plea process."  McGurn filed a brief on this issue, and the government, in light of *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), agreed that the matter should be remanded for an evidentiary hearing on the one outstanding claim of ineffective assistance of counsel in plea negotiations.  McGurn's case was remanded consistent with the government's agreement.  Hearings were held on October 22, 2013, and October 24, 2013, at which time McGurn's former counsel, Andrew Erba, Esquire and McGurn testified.  Following these hearings, Petioner filed a supplemental memorandum in further support of his single outstanding claim of ineffectiveness.

In his supplemental memorandum, McGurn argues that Erba was ineffective because he: (1) never provided an explanation of the terms of the proposed plea, DDE # 743 at p.1; (2)  never explained that (a) if McGurn lost at trial he would face the potential of a greater sentence and (b) that McGurn was inaccurate in his belief that he would receive less time, *id.* at 2-3; and (3) did not provide McGurn with any information that would allow him to meaningfully weigh his options, *id.* at 3.

## II.    SUMMARY OF FACTS

The Court finds that the testimony of Petitioner's counsel, Andrew Erba, Esquire, to be credible in all respects.  Mr. Erba is an experienced practitioner who handled many criminal cases during a long career as an attorney, and was a member of this Court's Criminal Justice

Panel.

The record shows that Mr. Erba met with Petitioner on many occasions and encouraged him to cooperate with the government as the best way to get the lowest possible sentence.  At no time did Petitioner assert that he was innocent of the offense charged.  There was one "proffer" meeting with the government, but no cooperation with the government followed.  Defendant then expressed his interest in pleading guilty.  At this point, Mr. Erba requested, with the petitioner's agreement, to look at a plea agreement which the government supplied.

Although Mr. Erba gave Petitioner a great deal of advice prior to the proffer meeting, *Lafler* identifies the time period after the government has proposed a plea agreement as the crucial period, and requires the Court to look at what events took place at that time.

Mr. Erba plainly admits that the only "advice" he provided to Petitioner in connection with the Government's plea offer was confined to a letter, which he expected Petitioner to read and understand.  Erba Test. at 21:13-22:17; 22:19-25; 23:16-20; 25:25-26:13; 66:1-8; 68:8-25.

When Mr. Erba showed up to meet with Petitioner, he immediately asked if Petitioner planned to accept the plea offer.  *Id.* at 23:16-20 ("only purpose of the meeting was to get the agreement signed"); *see also id.* at 21:13-22:17; 22:19-25; 25:25-26:13; 66:1-8; 68:8-25.  He did not explain what the offer was and how its terms would impact Petitioner's sentence; rather, he skipped that critical step and jumped to the ultimate question.  *Id.*  And when he assumed that Petitioner was not planning to accept the offer, Mr. Erba simply moved on – again, without bothering to explain what the offer entailed in contrast to the alternatives.  *Id.* at 26:8-13 (admitting that he "didn't read the plea agreement 'cause [Petitioner] didn't want to sign it").

Prior to trial preparation, Mr. Erba met with Petitioner only once *after* the Government's plea offer and proposed plea agreement were on the table.  Erba Test. at 21:13-22:17; CJA

Billing Entries (Ex. F to Pet.'s Opening Brief).  That meeting lasted less than thirty minutes and included no discussion on the substance of the plea offer.  Erba Test. at 22:19-22; 23:16-20.  Mr. Erba himself admits as much.  *Id.*

## III.   LEGAL STANDARD

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  This same standard applies to claims of ineffectiveness during plea negotiations.  *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012).

Under *Strickland*, the defendant must first show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  The defendant must then show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

In *Missouri v. Frye*, the Supreme Court addressed the prejudice concept in the context of a claim that defense counsel was ineffective in failing to communicate a plea offer to his client. The Supreme Court held that, "as a general rule, defense counsel has the duty to communicate formal prosecution offers to accept a plea on terms and conditions that may be favorable to the accused."  132 S. Ct. at 1408.  The Court further held that, to show prejudice where a plea offer has lapsed or been rejected because of counsel's deficient performance, a defendant must demonstrate a reasonable probability both that he would have accepted the more favorable plea offer had he been afforded effective assistance of counsel, and that "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it . . . ." *Id.* at 1409; *see also Lafler v. Cooper*, 132 S. Ct. at 1385.

The Supreme Court's recent decision in *Lafler*, *supra*, opened up a new avenue for post-conviction petitions where the petitioner had been offered a plea agreement, but rejected it, alleging ineffective assistance of counsel in the advice given about the plea agreement.

In *Shotts v. Wetzel*, 724 F.3d 364 (3d Cir. 2013), the Court determined that the petitioner could not meet *Lafler*'s requirement that "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Id.* at 376 (quoting *Lafler v. Cooper*, 132 S. Ct. at 1384). The Third Circuit observed that a defendant who rejects a plea must show that "'but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea' and the resulting sentence would have been lower." *Id.* (quoting *Lafler v. Cooper*, 132 S. Ct. at 1384)

In *Hines v. Ricci*, No. 10-4130, 2014 WL 314430 (D.N.J. Jan. 28, 2014), Judge Cavanaugh credited the petitioner's uncontradicted testimony, at the evidentiary hearing, that counsel did not inform the petitioner that he faced a life sentence if he rejected the plea and was convicted, now was there evidence to suggest that petitioner otherwise understood that fact. *Id.* at *2. Judge Cavanaugh also found that the petitioner would have accepted the plea offer but for counsel's deficient performance based on three facts: (1) the disparity between the sentence offered in the plea bargain and the potential sentencing exposure after trial, (2) a previous conviction of felony murder, which increased the risk that the judge would impose a life sentence if the petitioner went to trial, and (3) the petitioner's decision to enter guilty pleas on two of three remaining indictments, following the guilty verdict on the robbery. *Id.* at *7.

**IV.     ANALYSIS**

Although the testimony at the evidentiary hearing varied, the Court concludes that Mr. Erba's representation of Petitioner, specifically as to advice to him on the plea agreement, was deficient.

In order for an attorney's representation to meet the necessary "objective standard of reasonableness," the attorney must communicate all critical information to the client.  This is particularly true for a client like Petitioner with limited ability to read.  Simply sending a letter is not sufficient.  Moreover, the letter failed to set forth any meaningful information that would allow Petitioner to compare the Government's offer with the potential consequences of going to trial.  *See* Erba Letter (Ex. E to Pet.'s Opening Brief).  Notably, the express terms of the letter were at best misleading.  The letter represented that the Government "is agreeing" to a twenty year sentence when the proposed plea agreement contained no such provision or agreement.  *See id.*; *see also* Erba Test. at 75:9-12.

The agreement would have resulted in at least a twenty (20) year mandatory minimum imprisonment, although the government did not agree to that sentence, and in any event, could not bind the court.

Petitioner made the decision completely in the dark and without any meaningful understanding of the risks and consequences of pleading not guilty and going to trial, versus what he would gain by way of accepting the plea offer.  Mr. Erba's years of experience notwithstanding, his representation of Petitioner in connection with the plea process "fell below an objective standard of reasonableness."  *Lafler v. Cooper*, 132 S. Ct. at 1384.

Thus, the Government's argument that Mr. Erba provided Petitioner with enough information to weigh the plea offer against the alternative of proceeding to trial is not supported by anything in the record.

Mr. Erba never explained to Petitioner how the Presentence Report would compute a sentencing guideline range of imprisonment, or the requirement that the judge also consider the 3553(a) sentencing factors, as well as the mandatory minimum. This conversation would have given Petitioner some idea of what sentence he faced by going to trial if he was found guilty.

Counsel for the Government specifically acknowledged at the evidentiary hearing that "it's up to [Petitioner's] attorney to provide him with legal advice . . . I wasn't trying to suggest that my advice . . . would satisfy the requirements under the law." Oct. 24, 2013 Hr'g Tr. at 54:13-20.

Even though the Court credits Mr. Erba's testimony in general, the facts related by Mr. Erba do not show that he gave full advice to Petitioner about the possible benefits of the plea agreement, particularly, that going to trial would likely result in a much longer sentence than the 20 year mandatory minimum, which would have applied if the plea agreement had been accepted. Of course, there was no guarantee the Court would sentence Petitioner to the mandatory minimum of twenty years. There was some risk that he could receive a higher sentence if he pled guilty, since the maximum would have been life imprisonment. However, the record does not show that Mr. Erba ever advised Petitioner of this possibility. To be sure, Petitioner flatly rejected the concept of pleading guilty, with the consequences of a twenty year sentence, but the Court is not satisfied that he had full information and advice about all relevant considerations from Mr. Erba in making that decision.

The record is clear that Petitioner's reason for rejecting the plea agreement was that he did not want to accept a 20 year sentence as a consequence of pleading guilty.  However, the Court finds that he did not have an accurate picture of the alternatives that would apply if he pled not guilty and was convicted after a trial.  Mr. Erba never explained the benefits provided by the sentencing guidelines for pleading guilty, principally a three-level reduction in the offense level.  More importantly, an acknowledgment of guilt often motivates the sentencing judge, particularly when there is a lengthy mandatory minimum, to impose that mandatory minimum rather than anything higher.  All of this is somewhat conjectural because Petitioner had a serious criminal record which warranted his being sentenced as a career offender.  However, the Court cannot ignore the consequences of Mr. Erba's own testimony, that he could not recall giving Petitioner any general or specific advice of all the sentencing scenarios that would apply if he pled guilty, or was found guilty.  The record is also clear that Mr. Erba did not fully advise Petitioner of the various paragraphs of the plea agreement by the government.

For these reasons, the Court will **GRANT** the petition.  An appropriate Order follows.


O:\Criminal Cases\05-598-12 mcgurn\05-598.051614.memo.doc

8